JOHN T. JOHNSON *et al.*

*v.*

ELIZABETH L. VAN EPPS.

*Filed at Ottawa May 19, 1884—Rehearing denied September Term, 1884.*

1. LIFE INSURANCE—*to whom payment shall be made.* An insurance policy taken by the assured provided for the payment of a certain sum within thirty days after due notice and satisfactory evidence of his death, to his wife, or the legal representatives of the assured: *Held,* that the intention of the assured was, that his wife should have the proceeds in case she survived him, but in case she did not, such proceeds were to go to his executor or administrator, to be distributed in the due course of administration.

2. SAME—*meaning of the words "legal representatives."* The words "legal representatives," in a policy of insurance, as designating the beneficiaries, when there is nothing in the context or surrounding circumstances to indicate a contrary intention, mean "executors or administrators." A policy of insurance payable to the legal representatives of the assured, is the same as if made payable to himself.

3. SAME—*of the right of assured to change same.* Where a policy of insurance is made payable to the wife of the party procuring the same, or his legal representatives, whatever may be the right of the assured during the lifetime of his wife, after her death he will have the same power over it as if it had been originally payable to himself, his executors and administrators, and with the consent of the insurer he may surrender the same, and take out a new one payable to another person.

4. SAME—*payable to a stranger.* The insurance of one's own life by a party, for the benefit of one not a relative, is not void on grounds of public policy, as tending to encourage the commission of crime. But if it were, no one but the insurer can raise the question. That can not be urged by the heirs of the person insured.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. DAVID McCULLOCH, Judge, presiding.

Mr. MILES A. FULLER, and Messrs. FULLER & KEITHLEY, for the appellants:

The first policy vested a right in the beneficiaries therein named, which could not be divested except by their consent. Bliss on Insurance, sec. 317; May on Insurance, sec. 390; *Continental Life Ins. Co.* v. *Palmer,* 42 Conn. 60; *Chapin* v. *Fellows,* 36 id. 132; *Continental Mutual Life Ins. Co.* v. *Burroughs,* 34 id. 305; *Eadie* v. *Slimmons,* 26 N. Y. 9; *Swan* v. *Snow,* 11 Allen, 224; *Goslin* v. *Caldwell,* 1 Lea, (Tenn.) 454; *Wilburn* v. *Wilburn,* 83 Ind. 56; *Gould* v. *Emerson,* 99 Mass. 154; *Knickerbocker Life Ins. Co.* v. *Weits,* 99 Mass. 157; *Ricker* v. *Charter Oak Ins. Co.* 27 Minn. 193; *Allis* v. *Ware,* 28 id. 166; *Williams* v. *Williams,* 68 Ala. 406; *Succession of P. A. Kugler,* 23 La. 455; *Pilcher* v. *New York Life Ins. Co.* 33 La. Ann. 322; *Barry* v. *Equitable Life Ins. Co.* 59 N. Y. 587; *Glanz* v. *Gloeckler,* 104 Ill. 573; *Libby* v. *Libby,* 37 Me. 359.

Ordinarily, the meaning of the words "legal representatives," is that of executors or administrators; but the language here shows it meant the heirs. Bliss on Life Insurance, sec. 319; *Warnecke* v. *Lembca*, 71 Ill. 91; *Bowman* v. *Long*, 89 id. 19.

Mrs. VanEpps does not belong to the class entitled to aid under the association, it being to afford financial aid to the widows and orphans, heirs or devisees of deceased members.

Messrs. STARR & STARR, and Mr. JOHN C. YATES, for the appellee:

The cases cited on the first point, being on special statutes, have no application here.

After the death of Johnson's wife there was no special use in his keeping his certificate. It then belonged exclusively to him, and he had the right to have the same cancelled and a new one issued payable to another person. *Clark* v. *Durand*, 12 Wis. 248; *Kenman* v. *Howard*, 23 id. 128; *Gambs* v. *Mutual Life Ins. Co.* 50 Mo. 44; *Mutual Benefit Life Ins. Co.* v. *Atwood*, 24 Gratt. 497; *Mutual Life Ins. Co.* v. *Coghill*, 30 id. 72; *Doll* v. *Lincoln*, 31 Maine, 428; *Swift* v. *Mutual Aid Society*, 96 Ill. 309.

The new certificate was issued upon the application of Johnson,—not Mrs. VanEpps. Assenting to an assignment is treated in equity as a new policy. *Cole* v. *Marple*, 98 Ill. 58; *City Fire Ins. Co.* v. *Mark*, 45 id. 482; *Tillon* v. *Kingston Mutual Ins. Co.* 7 Barb. 573.

The certificate is to be treated as a policy of insurance. *Masons' Benevolent Society* v. *Winthrop*, 85 Ill. 537; *Masons' Benevolent Society* v. *Baldwin*, 86 id. 479; *Commercial League* v. *The People*, 90 id. 166; *Commonwealth* v. *Wetherbee*, 105 Mass. 160; *State* v. *Merchants' Mutual Benefit Society*, 72 Mo. 146.

There must be something illegal or immoral before a contract can be void as against public policy,—something that

is calculated to corrupt the public morals, or is in contravention of public interests.   *Gillett* v. *Logan County,* 67 Ill. 256.

The certificate could be enforced against the society as a gift to Mrs. Van Epps.   Bliss on Life Insurance, 513, 514, 515; *Grangias* v. *Arden,* 10 Johns. 291; *Dale* v. *Lincoln,* 62 Ill. 22; *Majors* v. *Everton,* 89 id. 56; *Cranz* v. *Kroyer,* 22 id. 74.

Mr. W. T. WHITING, guardian *ad litem* for minor heirs:

It matters not who paid the assessments on these certificates.   *Gambs* v. *Mutual Life Ins. Co.* 50 Mo. 44.

"Heirs" and "legal representatives" are, as to this case, synonymous terms.   *Loos* v. *Hancock Ins. Co.* 41 Mo. 540; *Masonic Association* v. *McAuley,* Am. Law Reg. 1883, 141; *Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 Ill. 252.

A certificate is controlled by the constitution and by-laws of the society.   *Richmond* v. *Johnson,* 28 Minn. 448.

One of the questions arising early in this case is, which certificate is in force.   If the first, then the reasons therefor may be found in—

First—A vested interest in the heirs.   *Pilcher* v. *New York Life Ins. Co.* 33 La. Ann. 323; Hirschl on Fraternities, 25; *Glanz* v. *Gloeckler,* 104 Ill. 573; 10 Bradw. 486.

Second—The second certificate being void in whole.   *Penn* v. *Bornman,* 102 Ill. 534; *McGowan* v. *Insurance Co.* 54 Vt. 215; *Van Buren* v. *St. Joseph,* 28 Mich. 404; *Mutual Life Ins. Co.* v. *Miller,* 13 Bush, (Ky.) 491; *Folmer's appeal,* 87 Pa. St. 138.   Or in part.   *Koontz* v. *Hannibal,* 42 Mo. 128; *Arnott* v. *Pittston,* 2 Hun, 591.

Third—The validity in favor of the heirs, *pro rata,* as to assessments upon the old and new certificates,—that to this extent, at least, it was a paid-up policy—an executed contract.   *Harley* v. *Heist,* 86 Ind. 199; *Connecticut Mutual Life Ins. Co.* v. *Burroughs,* 34 Conn. 315; *Landrum* v. *Knowles,* 22 N. J. Eq. 595.

The second certificate could be attacked on the ground of public policy, and declared void. *Mutual Benefit Association* v. *Hoyt*, 46 Mich. 478; *Missouri Valley* v. *Sturges*, 18 Kan. 93.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 1st of August, 1872, the Illinois Masons' Benevolent Society, for the consideration therein mentioned, issued, under its seal, to H. B. Johnson, of Toulon, this State, a certificate of membership, in the nature of a policy of insurance, whereby said society promised and agreed "to and with the said H. B. Johnson, his heirs, executors, administrators and assigns, well and truly to pay, or cause to be paid, to Judith Johnson, his wife, *or the legal representatives of the said H. B. Johnson,* within thirty days after due notice and satisfactory evidence of his death," certain sums of money in said certificate or policy specified. Mrs. Judith Johnson having previously died, the society, on the 17th of January, 1880, at the request of the assured, and upon his representation that Mrs. Elizabeth L. Van Epps, of Peoria, Illinois, was then his *affianced,* cancelled the above certificate of insurance, and issued another to him of that date, substantially the same as the first, except that it was made payable to the said *"Mrs. Elizabeth L. Van Epps, or the heirs of the said H. B. Johnson."* At the time of issuing the new certificate, certain indorsements were made upon the old one. Across the face was written: "Cancelled—Null and void—New certificate, January 17, 1880." On the back is the following:

"On the 17th day of January, 1880, the within certificate was surrendered to the Illinois Masons' Benevolent Society, at my request, and a new one of that date issued, with benefit payable to Mrs. Elizabeth L. Van Epps, my affianced. I have no children.                    H. B. JOHNSON,
            Formerly of Toulon, Stark county, Ill."

At the date of this transaction Mrs. Van Epps was a married woman, though living apart from her husband, from whom she was divorced on the 6th of October following. The evidence tends to show that prior to the above transaction the assured was an occasional guest or lodger in the house of Mrs. Van Epps, and that during the year 1880, his health having become precarious, he changed his residence to Peoria, and became a permanent lodger in her house, where he was taken care of and supported by her until the time of his death, which occurred on the 25th of October, 1881. The deceased left no children or descendants of children, the appellants being his collateral heirs only. Upon Johnson's death, the company having been notified by appellants not to pay to Mrs. Van Epps the amount due under the policy, payment was accordingly withheld until their respective rights could be determined. The company thereupon filed the present bill of interpleader, to compel them to litigate their title to the fund in question, which amounts to $4160.41. The company has brought this sum into court, that it may be paid to the successful claimants, whoever they may be. Upon the hearing of the cause the court found Mrs. Van Epps entitled to the fund, and entered a decree accordingly, which, on appeal, was affirmed by the Appellate Court for the Second District, and the heirs bring the record here for review.

After a careful consideration of the evidence in this case, we do not feel inclined to disturb the decree, unless some imperative rule of law demands it. The proofs satisfactorily show that Johnson, after the death of his wife, by reason of the loss of health, and consequent travel in attempting to regain it, became financially in very straightened circumstances,—so much so that he was in effect forced to make some disposition of his certificate or policy of insurance, or suffer it to lapse for non-payment of assessments. Under these circumstances he "entered into arrangements with Mrs. Van Epps whereby she was to pay all assessments, furnish

him a home, and take care of him in case of sickness," in consideration of which she was to receive the proceeds of the policy upon his death. In pursuance of this understanding, the old certificate was taken up and cancelled, and a new one issued, as already stated. This agreement has been faithfully executed on her part. The evidence shows that after the change in the certificates, all assessments, amounting in the aggregate to $165.20, were paid by her; that she furnished the deceased with a comfortable home, supported and nursed him through a long period of suffering and prostration that preceded his death. Whatever may be the legal aspects of the case, it must be conceded Mrs. Van Epps, on the principles of natural justice, has a strong claim upon the fund in dispute. But of course these principles, of themselves, can not avail, as the rights of the parties to this, as well as to all other legal controversies, must be determined according to the positive law of the State, whether that law entirely coincides with our notions of natural equity, or not. The question then is, when thus tested, what are the legal rights of the parties?

The first position assumed by appellants, as stated in their own language, is: "That immediately upon the issuance of the first policy, payable to 'Judith Johnson, or to the legal representatives of H. B. Johnson,' the right of said beneficiaries became vested, and could not be divested in any way without their consent. The property, or ownership of the policy, was in the beneficiaries, and beyond the control of Johnson, the insured, and he could do no act to divest or transfer it from them to other parties." Numerous authorities are cited as sustaining the view thus stated, among which are the following: Bliss on Insurance, sec. 317; May on Insurance, secs. 390, 391; *Continental Life Ins. Co. v. Palmer,* 42 Conn. 60; *Chapin v. Fellows,* 36 id. 132; *Gould v. Emerson,* 99 Mass. 154; *Glanz v. Gloeckler,* 104 Ill. 573.

With respect to the cases cited, appellee contends they are, in the main, if not altogether, based upon the statutes of the several States in which they arose, and not upon common law principles. It is also claimed the text of May and Bliss is founded solely upon these cases, and hence it is concluded the authorities cited can have no effect in this case. It is further claimed by appellee, that in the absence of any statutory provisions controlling the question, the rule contended for by appellants is applicable only where the policy is taken out by the beneficiary, and not by the party whose life is insured,—or, in other words, only when the contract of insurance is between the beneficiary and the insurer, as, where a wife or child takes out a policy on the life of the husband or father, as in the case of *Glanz* v. *Gloeckler,* 104 Ill. 573, above cited; that the rule has no application where one takes out a policy in his own name, for the benefit of his wife or child, as was the case here; that in such case, the contract being between the insurer and the party whose life is insured, so long as the latter retains possession of the policy he has the right, with the consent of the insurer, to change the contract of insurance so as to give the proceeds of the policy, upon his death, to a different beneficiary, or to change it in any other manner the contracting parties may agree upon, not contrary to law or good morals. That this position is supported by many analogies of the law, as well as by express adjudications, must be conceded; (*Clarke* v. *Durand,* 12 Wis. 248, *Kerman* v. *Howard,* 23 id. 108, *Foster* v. *Gile,* 50 id. 603, and *Gambs* v. *Mutual Life Ins. Co.* 50 Mo. 44;) and assuming it to be the law, the decree in this case is clearly right. But whether, as a general proposition, this be the correct view or not, we do not regard as material to the decision of this case, and we shall therefore not stop to consider it, as the conclusion to be reached will be placed on a different ground.

If, as claimed by appellants, where one takes out a policy on his own life for the benefit of another, the latter at once acquires a vested interest therein which can not be defeated by any act of the assured or insurer, or by the combined action of both, it would seem to follow such an interest would not be defeated by the death of the beneficiary in the lifetime of the assured, but that in such case the right thus vested in the policy would pass, like any other chattel interest, to the executor or administrator of the beneficiary, so that if it be assumed the interest in the first certificate of insurance, upon being issued, at once vested in Mrs. Johnson, and the rule suggested be applied to the present case, it is clear the right to the proceeds of the policy is in her personal representatives, and not in the appellants, which of course would be fatal to their claim.    They are therefore forced to the position that upon the death of Mrs. Johnson, the first beneficiary in the order of limitation, and all persons claiming through her, ceased to have any interest in the policy or its proceeds, and it seems to be now conceded by both parties to this appeal that the instrument in question must be now construed in the same way it would be if Mrs. Johnson's name had never appeared in it as a beneficiary.    It is manifest, as already remarked, any other view would be fatal to the claim of appellants.    Striking out the name of Mrs. Johnson as a beneficiary, the policy or certificate would then be payable to "the legal representatives of the said H. B. Johnson," and the question for determination is, what construction should a policy receive thus drawn.    If by the expression, "legal representatives," is meant the executor or administrator of Johnson, which is the ordinary meaning attached to it, it is clear appellants did not, as contended by their counsel, take an immediate vested interest in the policy at the time it was issued, and if they took none then, it will hardly be contended they have any now.    The doctrine seems to be well recognized that the words, "legal representatives," when used to

indicate those entitled by law to a decedent's personal estate, as was the case here, uniformly mean, where there is nothing in the context or surrounding circumstances to indicate a contrary intention, "executors and administrators." (*Loos* v. *John Hancock Life Ins. Co.* 41 Mo. 538.) In 2 Jarman on Wills, sec. 649, the author, referring to the expressions, "legal representatives," and "personal representatives," says: "Each of these terms, in its strict literal acceptation, evidently means executors or administrators, who are, properly speaking, the 'personal representatives' of their deceased testator or intestate."

We fail to discover anything in the certificate to indicate the expression, "legal representatives," was used out of its ordinary and appropriate sense; nor do we perceive anything in the surroundings or circumstances attending the transaction to warrant the conclusion the expression in question was used in any other sense than that of "executors" or "administrators." On the contrary, we are of opinion the circumstances rather strengthen the view it was used in its ordinary and appropriate sense, as above stated. Judging from Johnson's pecuniary circumstances at the time of his death, it is probable he was a man of limited means when the first certificate was issued. He was without children, and outside of his wife he had no relations that he was under any obligation to maintain or provide for. His highest duty, therefore, in disposing of the proceeds of the certificate of insurance, was to first provide for his wife, and then for such as might have just claims against his estate in the event he survived her, and this we think he accomplished by limiting the proceeds of the certificate in the manner he did. In short, we think, so far as the first certificate is concerned, it was the intention of Johnson that his wife should have the proceeds in the event she survived him, but in case she did not, such proceeds were to then go to his executor or administrator, to be distributed in due course of administration.

This view is, of course, fatal to appellants' claim. Whatever may have been the rights of Johnson with respect to the policy before the death of his wife,—about which we express no opinion,—we have no hesitancy in holding that after that event he had the same power over it as if it had originally been made payable to himself, "his executors and administrators," in which case, of course, he would, at any time during his life, with the consent of the company, have had the right to surrender it, and take out another, making a different disposition of the proceeds, as was done in this case. The taking out of the new certificate was, under the circumstances of this case, in legal effect the taking out of a new policy; and that it was competent for the contracting parties to do so, under the circumstances of this case, is fully shown by the case of *Swift* v. *Mutual Aid Society*, 96 Ill. 309. We cite, also, in this connection, *Cole* v. *Marple*, 98 Ill. 58; *Mutual Benefit Life Ins. Co.* v. *Atwood*, 24 Gratt. 497; *Mutual Life Ins. Co.* v. *Coghill*, 30 id. 72; *Doll* v. *Lincoln*, 31 Maine, 428.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON, dissenting:

I regard the provision for payment to Mrs. Van Epps as void, as being repugnant to the whole purpose and design of the association, as set forth in its constitution and by-laws. Article 2 of its constitution declares: "The business and object of this society shall be to give financial aid and benefit to the widows, orphans, and heirs or devisees of deceased members." A section of its by-laws declares: "The business and object of this society shall be to afford financial aid and benefit to the widows, orphans, heirs and devisees, *only*, of its deceased members." The latitude allowable in the case of insurance companies in making policies of insurance for the benefit of others, is not, consequently, admissible in such

a case as this, as our statute in respect to "corporations not for pecuniary profit," declares: "Associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, * * * shall not be deemed insurance companies."

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: The point is made in the petition for a rehearing, that the law will not sanction any contract or other engagement which has a tendency to the commission of crime, and it is claimed the insuring of one's own life for the benefit of a stranger has such a tendency;—hence it is concluded the certificate of insurance to Johnson, for the benefit of Mrs. Van Epps, is void. Viewing this as an original question, there is certainly but little, if any, force in it, so far as it is supposed to be applicable to the case in hand. It is an every day occurrence for persons to make wills containing bequests to mere strangers having no notice of their provisions, and yet the validity of such wills has never been questioned on the ground suggested. So, it is not infrequent that contracts are made to pay sums of money upon the death of a specified person. So, it is a part of every day's experience to convey lands to one for life, with remainder in fee to another, and the validity of these transactions has certainly never been doubted on the grounds suggested,—and yet the temptation of the beneficiary to accelerate the enjoyment of property thus limited, by taking life, is just as strong in either of the cases mentioned as in the case before us.

Upon the record before us, however, we deem it wholly unnecessary to inquire whether the claim of Mrs. Van Epps stands upon the same footing that one confessedly founded upon a wager policy does, as is claimed to be the case by appellants, for the result, let the question be decided as it may, is all the same, and equally fatal to their right to main-

tain this appeal.   The company has brought the fund in dispute into court, for the express purpose of discharging its liability on the certificate or policy payable to Mrs. Van Epps, and sets forth in its bill that the former certificate was, at the request of Johnson, in his lifetime, taken up and cancelled by the company, and consequently now has no existence. These facts are not denied by appellants, but are admitted upon the record to be true, and the only shadow of claim they have, or claim to have, to the fund in question, must be worked out through the present certificate, which is expressly payable to Mrs. Van Epps, and the by-laws of the company or society, in express terms, as well as the law of the State, if the certificate has any legal effect at all, require the fund to be paid to *"the beneficiaries named in the certificate."*

If the requirement of the by-laws is to be observed, this money, of course, must be paid to Mrs. Van Epps.   But for the purpose of defeating her claim, appellants, as we have just seen, say the making of the certificate payable to her was not authorized by law,—that such a contract is in the nature of a wagering policy, and is consequently void as against public policy.   Conceding, for the purposes of the argument, this is so, and that the decree for this reason is erroneous, it does not necessarily follow the decree should be reversed, at the instance of appellants, for that reason.   The argument is like a two-edged sword,—it cuts both ways.   It proves too much.   As it has been fully shown the alleged rights which appellants are seeking to enforce in this proceeding are based upon this very certificate, and if it is true, as claimed by them, the certificate is void as against public policy, it manifestly follows they themselves acquired no rights under it, for no one can acquire rights under a void instrument, and it is hardly necessary to add, one will not be heard to complain of an error that does not injuriously affect some right of his.   Assuming appellants' hypothesis to be true, the company or society alone would have the right to

complain. But it is entirely content, and makes no objection whatever to the payment of the money on the ground suggested.

In any view, appellants have no right to the proceeds of the certificate in question.