Dworak v. Supreme Lodge.

---

ANTON DWORAK, APPELLANT, v. SUPREME LODGE, WESTERN BOHEMIAN FRATERNAL ASSOCIATION; MARIE DWORAK ET AL., APPELLANTS; WILLIAM DWORAK ET AL., APPELLEES.

FILED MAY 19, 1917, No. 19502.

1. Insurance: FOREIGN BENEFICIAL ASSOCIATIONS: LIMITATIONS. A benefit society incorporated in another state which comes into this state in order to do business under the permission granted by the laws of Nebraska is subject to the same limitations and restrictions as such an association organized in Nebraska.

2. ———: ———: BENEFICIARIES: LAW GOVERNING. The statute of Nebraska which specifically prescribes the persons to whom payment of benefits by a fraternal beneficiary association can be made (Rev. St. 1913, sec. 3298), governs in all Nebraska contracts. The law of the domicile of a foreign association has no application to such contract.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. Affirmed.

Weaver & Giller, Louis Berka and Nelson C. Pratt, for appellants.

Stout, Rose & Wells, contra.

LETTON, J.

Joseph Dworak, a resident of Nebraska, became a member of the defendant, which is a fraternal beneficiary association, organized in the state of Iowa. The certificate provided that upon his death the sum of $1,000 would be paid to his wife, Marie Dworak, and his stepchildren, Milton Dworak and Stanley Dworak. He died and left surviving him William Dworak, Joseph Dworak, Carrie Dworak, now Carrie Johndeit, and Arthur Dworak, his children by a former marriage. He had no children by the second marriage. He became divorced from his wife and ceased to reside with her and her children, so that thereafter none of the beneficiaries were members of his family or household. Shortly before his death he designated the plaintiff, Anton Dworak, his brother, as beneficiary, instead of his former wife and her children, but the former beneficiaries allege that this was not done in accordance with the by-laws of the association and is therefore of no effect. This action was brought by Anton Dworak to recover the proceeds of the certificate. The defendant association admitted the indebtedness, alleged that there were several claimants of the fund, and paid the money into court for the benefit of the persons whom the court might find entitled to it. The divorced wife, Marie Dworak, and her children claimed as beneficiaries under the certificate. The children of the insured in their answer plead the invalidity of the assignment to plaintiff, set forth the facts as to the divorce of Marie Dworak, alleged that neither she nor the other beneficiaries were members of the family of Joseph Dworak at the time of his death, or for a long time prior thereto, and were not blood relatives or dependent upon him; that they are the children and the only heirs of the insured, and that under the constitution and by-laws of the association and the laws of the state of Nebraska they were entitled to the amount due upon the certificate.

At the oral argument it was stated by counsel for Anton Dworak that his client was willing that the fund be paid

to the children and next of kin as was adjudged by the district court. This relieves the court of the necessity of considering the validity of the attempted change of beneficiaries. The only question necessary to determine is whether the statutes of Iowa and by-laws of the association govern the disposition of the fund, or whether this is controlled by the laws of the state of Nebraska. If the former apply, the beneficiaries named, the divorced wife and her children, are entitled to the money; if the latter, the children of Dworak are entitled to it.

The case was tried upon an agreed statement of facts. In addition to the facts hereinbefore stated, it appears that the application for membership was made in Omaha and forwarded by the officers of the local lodge to Cedar Rapids, Iowa, where the certificate was made out and signed by the supreme officers. It was then forwarded to the subordinate lodge in Omaha, was signed by the officers of the local lodge in Omaha, and delivered there to the insured. The application provided that the certificate would not be effective until the applicant was initiated in the local lodge and the certificate delivered to and signed by the applicant. After April, 1910, neither Marie Dworak nor her children lived with the insured, and none of them was a blood relative of or dependent upon the insured, nor an heir. The divorce was granted Marie Dworak in February, 1911. The Iowa statutes provide: "No fraternal association created or organized under the provisions of this chapter shall issue any certificate of membership to any person under the age of fifteen years, nor over the age of sixty-five years, nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such member." Iowa Code, sec. 1824. The supreme court of Iowa in *White v. Brotherhood of American Yeomen*, 99 N. W. 1071 (124 Ia. 293), construing section 1824 of the Iowa Code, where the facts were that a certificate was issued by a fraternal association "payable to a certain person by name, such person being the wife of the member when the certificate was is-

sued; subsequently she was divorced, and the member remarried, but made no change of beneficiary"—held that on the death of the member the first wife was entitled to the proceeds of the certificate. The business is conducted in the Bohemian language. The articles of incorporation recite as one of the objects of the organization: "To provide for the creation of a fund of assessments, contributions or otherwise, for the purpose of paying benefits to widows and children of deceased members, in accordance with the constitution, by-laws, rules and regulations that are now in force or that may from time to time be adopted by this supreme lodge." The by-laws provide that the benefit certificates "among other contents must contain also the name of the person or persons designated as heirs by the insured member, who have to be members of the family or related to him by birth." Another translation is: "This insurance, however, can be only in favor of the members of his family, or blood relatives, or mutually for husband or wife, or persons dependent on the member."

Section 94, ch. 43, Comp. St. 1911 (Rev. St. 1913, sec. 3298), which was in effect at the time the certificate of insurance was issued and at the time of the death of Dworak, provides: "Payment of death benefits shall only be made to families, heirs, blood relations, affianced husband, or affianced wife, or to persons dependent upon the member." It will be noted that in Iowa whether a person may become a beneficiary is determined by his status at the time the contract is entered into, but in this state the law controls to whom payment shall be made upon the matured obligation. We have held under a like state of facts with reference to the application for insurance, the conditions for membership, and the delivery of the certificate, that such a contract was entered into in Nebraska. *Pringle v. Modern Woodmen of America,* 87 Neb. 548; *Haas v. Mutual Life Ins. Co.,* 90 Neb. 808. A like view is taken in Illinois and Maryland: *Coverdale v. Royal Arcanum,* 193 Ill. 91; *Expressman's Mutual Benefit Ass'n v. Hurlock,* 91 Md. 585.

When the defendant association entered this state to do business, it came subject to the laws of this state regulating fraternal insurance. The statutory provision limiting and defining the classes of the persons to whom death benefits should be paid became as much a part of the contract of insurance as if it had been written therein, and it declared the policy of the state with respect to such contracts. *Leumann v. Grand Lodge, A. O. U. W.,* 85 Neb. 803. Every person concerned with the same, whether insurer, insured, or beneficiary, is bound to take notice of the law. It is pointed out in 29 Cyc. 108, that "where the classes of persons to whom benefits may be paid are prescribed by statute or by the society's charter of incorporation, neither the society, nor a member, nor the two combined, can divert the fund from the classes prescribed." It is also a settled rule that where a beneficiary becomes ineligible or disqualified, and therefore not entitled at the time of the death of the insured to receive the benefit, the fund goes to such other persons within the class as are eligible to take the benefits in the manner prescribed by statute. *Giffin v. Grand Lodge, A. O. U. W.,* 99 Neb. 589; *Johnson v. Grand Lodge, A. O. U. W.,* 91 Kan. 314, 50 L. R. A. n. s. 461; *Knights of Columbus v. Rowe,* 70 Conn. 545; *Lister v. Lister,* 73 Mo. App. 99; *Supreme Lodge, K. & L. of H., v. Menkhausen,* 209 Ill. 277.

Appellants rely upon *Supreme Council, Royal Arcanum, v. Green,* 237 U. S. 531, L. R. A. 1916A, 771. The question in this case is so different that the opinion in that case does not control its decision. The question there involved the relation existing between the corporation and its members and between the members themselves with respect to uniformity of assessments in different states. Here we are not concerned with such questions, since such relations have all been terminated by the maturity of the contract. The corporation itself is practically out of this case. It has paid the money in dispute into court for the benefit of the proper beneficiary. The contract was made with respect to

the Nebraska statute, and it must control the payment of the obligation.

JUDGMENT AFFIRMED.

ROSE and SEDGWICK, JJ., not sitting.

HAMER, J., dissenting.

The case relied upon in the majority opininon is *Giffin v. Grand Lodge, A. O. U. W.*, 99 Neb. 589. That case was based upon a contract entered into in Nebraska by a resident of Nebraska. Thomas Coppinger was a member of the grand lodge of Ancient Order of United Workman, a fraternal insurance society, organized under the laws of Nebraska. The society, through its subordinate lodge at Gibbon, Nebraska, issued to Coppinger a certificate for $1,000 in which his wife was named as beneficiary. She obtained a divorce from Coppinger, and he died. No change was made in the benefit certificate by Coppinger after the plaintiff got her divorce. The plaintiff brought her action against the defendant society, and the sisters and brothers of Thomas Coppinger interpleaded. The district court decided in favor of the interpleading defendants, and gave them judgment for the amount of the benefit certificate, $1,000, less the sum of $130.40, which it was shown that the plaintiff had paid as dues upon the certificate, the plaintiff being allowed an equitable lien upon the benefit certificate in force. The plaintiff appealed, and the controversy was between the former wife of Coppinger and the heirs of the insured, who were his sisters and a brother. The plaintiff obtained her divorce August 25, 1912, and Coppinger died March 4, 1913. Perhaps the fact that the plaintiff took Coppinger to her home after he fell sick and took care of him until he died may have made a kindly feeling toward her upon the part of the members of the local society. He was sick and out of money. By the opinion it appears that section 96 of the by-laws of the society provided: "Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall in every instance be one or more mem-

bers of his family, or some one related to him by blood, or his affianced wife." The certificate issued designated Coppinger's wife as his beneficiary. Section 98 of the by-laws provided: "If one or more of the beneficiaries shall die during the lifetime of the member, the surviving beneficiaries or beneficiary shall be entitled to the benefit equally, unless otherwise provided in the beneficiary certificate, and if all the beneficiaries shall die during the lifetime of the member, and he shall make no other direction, the benefit shall be paid to his widow if living at the time of his death," or if there shall be no widow, no children, no grandchildren, no mother, no father, "then the brothers and sisters of such member, share and share alike," and the money shall go to the beneficiary fund of the grand lodge if no one living at the time of the death of the member is entitled to said benefit. It was alleged that the deceased left no widow nor children nor father nor mother, and that defendants were his sole heirs at law.

After Coppinger's wife obtained a divorce from him, he did nothing to change the beneficiary, but, so far as he was concerned, left the divorced wife to continue as his benefiiciary, and he probably preferred that she should be, as she was always supposed to be kind to him and she took care of him in his fatal illness, and she paid the premiums on the policy alone. The district court found against her, and however equitable and just her claim may have been, and however willing the association may have been to pay her, the district court cut her off because of what he supposed to be his duty. The question for decision therefore was whether the plaintiff named in the beneficiary certificate was entitled to the proceeds of the certificate or the sisters and brother of the insured. He intended all for her.

The statute which it was claimed affected the question was sec. 94, ch. 43, Comp. St. 1911, which was in force at the time of the death of said Coppinger, and which has been embodied in similar form in sec. 3298, Rev. St. 1913. The section reads: "No fraternal society created or organized under the provisions of this act shall issue beneficiary cer-

tifiicate of membership to any person under the age of 18 years, nor over the age of 55 years. Payment of the death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife of or to persons dependent upon the member." The statute quoted and the by-laws set out are limitations upon the power of the lodge to contract. If available to any one, these limitations are available to the lodge, and should not operate to confer a right upon any one not named in the certificate to participate in the fund due the beneficiary. By section 98 ot the by-laws the amount due on the certificate is to be paid to the beneficiaries therein named unless said beneficiaries shall die, in which event, only, the benefit shall be paid to the widow, children, grandchildren, parents, brothers or sisters. Section 94, ch. 43, Comp. St. 1911, is, also, a limitation upon the power of such societies to contract, and is not sufficient to confer any title to the fund upon any one not named in the certificate. The fourth section of an act passed in 1897 (Laws 1897, ch. 47) entitled "An act defining fraternal beneficiary societies, orders or associations, and regulating the same, and to repeal an act entitled 'An act to exempt certain societies and associations from the requirements of chapter 16 of the Compiled Statutes,'" has no other purpose than to define the powers of such societies. The statute does not prescribe, nor do the by-laws define, to whom payment of the death benefit shall be made in the event that the beneficiary named in the certificate is an improper person, because of the by-laws or the statute. The certificate does not name any person entitled to become a beneficiary. The certificate remained unchanged, and with the name of the wife who procured the divorce in it. The brothers and sisters in that case should have had no standing. The people who came in and claimed the money as beneficiaries were strangers to the contract. The wife was a proper person at the time the certificate was issued to be named as beneficiary, and her rights ought not to have been affected by reason of the subsequent divorce. No one but the insurer could properly make the contention that she had no

insurable interest in the life of the deceased at the time of his death. Who had a right to put the name of the beneficiary out of the certificate? The decree of divorce did not do it. *Schmidt v. Hauer*, 139 Ia. 531. It ought to be the rule that life insurance valid in its inception remains so unless otherwise stipulated in the contract. *Courtois v. Grand Lodge, A. O. U. W.*, 135 Cal. 552; *Overhiser, Adm'x, v. Overhiser*, 63 Ohio St. 77; *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U. S. 457; Bacon, Benefit Societies (3d ed.) sec. 253. The language used in section 96 of the by-laws cannot be said to be equal to an agreement that, in the event of a change in the status of the beneficiary named, the designation of such person shall be no longer of any force or validity. The interpleading defendants had no standing in the case, for the reason that only the society could properly object. The contract made was a contract between the insured and the society. The society was perfectly willing to pay the former wife. The decision rendered was a very severe sort of decision in view of the actual facts, and it was an unjustifiable decision apparently in view of the law. The arrangement made was an arrangement between the insurance company and the insured. When he wanted somebody else to be the beneficiary, rather than the old wife who provided for him up to the time of his death, it was time enough to change the beneficiary.

The principle invoked was decided by this court in *Baker v. Hardy*, 96 Neb. 377. Columbus Hardy, the deceased, had been a member of the National Union, a fraternal society, and had taken out a benefit certificate in favor of his wife, Mina I. Hardy. Shortly before his death, and without the knowledge or consent of his wife, he caused the certificate to be made payable to his son as trustee for his wife and his mother. The trustee was directed to pay to the mother an indebtedness which was owing to her and to pay the remainder to the wife. The certificate was paid to the son, and he disregarded the direction to pay to the mother, and the suit was prosecuted by the guardian of the mother.

101 Neb.—20

Judgment was rendered against the guardian, and he appealed. This court said: "It is defendant's first contention that the plaintiff could not be named as a beneficiary, because she was not a member of the family of the deceased within the meaning of the laws of the order at the time of the change of the beneficiary, and was not a dependent. It appears that the laws of the society nominated blood relations, members of the family, and dependents as proper persons to be named as beneficiaries. * * * The testimony shows that during the life of the assured he changed the beneficiary by making his son, Noble Vaughn Hardy, a trustee to collect the money to become due under the beneficiary certificate for the benefit of his mother and his wife. This change was consented to by the National Union, and after the death of the assured the amount due on the benefit certificate was paid to the defendant, as trustee, by the society, without any objection whatsoever. The insurer having paid the amount of the certificate to the trustee, no other party can complain of the change, for that is a right which can only be taken advantage of by the insurer. 29 Cyc. 105-107; *Tepper v. Supreme Council, Royal Arcanum,* 59 N. J. Eq. 321; *Young Men's Mutual Life Ass'n v. Harrison,* 10 Ohio Dec. 786; *Alfsen v. Crouch,* 115 Tenn. 352, 89 S. W. 329; *Grand Lodge, A. O. U. W., v. Brown,* 160 Mich. 437; *Johnson v. Van Epps,* 110 Ill. 551."

In *Johnson v. Knights of Honor,* 53 Ark. 255, 8 L. R. A. 732, the statute was similar to ours. Comp. St. 1911, ch. 43, sec. 94. In that case it was said in the opinion that the word "heirs" is a technical word. "At law it was used to designate the persons on whom an inheritance in real estate was cast by the law on the death of the ancestor. Originally it could not be used to designate those on whom the goods or chattel property were cast, because the law cast them upon no one. No one 'was appointed by law to succeed to the deceased ancestor; on his death, they became *bona vacantia,* and were seized by the king on that account, and by him, as grand almoner, applied to pious uses, * * * for the good of the souls of their former owner.'" It is

then said the "weight of authority holds that the word
'heirs,' when used in any instrument to designate the per-
sons to whom personal property is thereby transferred,"
means those who under the statute of distribution are men-
tioned as heirs in the event of death and intestacy, citing
many cases in England and America, among others, *Hough-
ton v. Kendall,* 7 Allen (Mass.) 72; *Croom v. Herring,* 4
Hawks (N. Car.) 393; *Eddings v. Long,* 10 Ala. 203; *Rich-
ards v. Miller,* 62 Ill. 417; *Hascall v. Cox,* 49 Mich. 435.

In the Arkansas case the court held that no one but the
lodge could raise the question of ineligibility of the bene-
ficiary, and that by paying the money into court it had
waived the defect. *Johnson v. Van Epps,* 110 Ill. 551;
*Peek's Ex'r v. Peek's Ex'r,* 101 Ky. 423; *Alfsen v. Crouch,*
115 Tenn. 352; *Stoelker v. Thornton,* 88 Ala. 241.

In *Cowin v. Hurst,* 124 Mich. 545, M. was a member of
the Ancient Order of United Workmen. The beneficiary
was entitled to receive $2,000. His first beneficiaries, his
wife and daughter, having died, he wished to make his son-
in-law his beneficiary. As this was prohibited by the
articles of the association, he made his niece his benefici-
ary, with a written agreement receipt of the fund that she
should pay it over to his son-in-law. The niece received
the draft, but refused to transfer to the son-in-law or to
pay him the money. It was held that the association was
the only party in position to contest the legality of the
transaction, and therefore that she was bound to carry out
the trust.

In *Overhiser v. Overhiser,* 14 Colo. App. 1, the Ancient
Order of United Workmen issued a benefit certificate to
George Overhiser in which his wife was named as bene-
ficiary. She obtained an absolute divorce from him, but he
made no change in the beneficiary. The court held that
obtaining a divorce by the wife was not the legal equival-
ent of the death of the beneficiary so as to give the heirs any
right to the fund.

I am of the opinion that the decision of this court in
*Giffin v. Grand Lodge, A. O. U. W.,* 99 Neb. 589, was

wrong, and that it should be overruled. The lodge waived all objections.

But whether the opinion was wrong in the foregoing case or not, that case was different from this one. In this case the fraternal beneficiary association was a corporation of the state of Iowa. The action was brought by Anton Dworak to recover the proceeds of the certificate. The defendant association admitted the indebtedness and paid the money into court for the benefit of the person or persons who might be entitled to it. That was a waiver of objections. In the majority opinion it is said: "The only question necessary to determine is whether the statutes of Iowa and by-laws of the association govern the disposition of the fund, or whether this is controlled by the laws of the state of Nebraska. If the former apply, the beneficiaries named, the divorced wife and her children, are entitled to the money; if the latter, the children of Dworak are entitled to it."

The certificate issued to Joseph Dworak provided that upon his death the sum of $1,000 would be paid to his wife, Marie Dworak, and his stepchildren, Milton Dworak and Stanley Dworak. He had children by a former marriage, but no children by his second marriage. When divorced from his wife, Marie Dworak, it is claimed that he ceased to reside with her and her children. There was a trial upon an agreed statement of facts by which it appeared that the application for membership was sent by the officers of the local lodge at Omaha to Cedar Rapids, Iowa, where the certificate was made out and signed by the supreme officers. They then sent the certificate to the subordinate lodge in Omaha, and it was then signed by the officers of the local lodge and delivered to the insured. The divorce appears to have been granted to Marie Dworak in February, 1911. The Iowa statute is shown by the majority opinion to provide: "No fraternal association created or organized under the provisions of this chapter shall issue any certificate of membership to any person under the age of fifteen years, nor over the age of sixty-five years, nor unless the

beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such member."

In *White v. Brotherhood of American Yeomen,* 124 Ia. 293, the supreme court of Iowa, in construing section 1824 of the Iowa Code, where a certificate was issued by a fraternal association payable to a certain person by name, such person being the wife of the member when the certificate was issued, and subsequently she was divorced, and the member remarried, but made no change of beneficiary, held, that on the death of the member the first wife was entitled to the proceeds of the certificate. Here is the business being transacted in an Iowa association where the supreme lodge issues the certificate to another state, but the courts of the state of Iowa have held that the person named in the certificate as beneficiary would be entitled to recover. That being the case, it would appear that there is but little jurisdiction left in our court to undo what has been done by the supreme lodge at Cedar Rapids, Iowa, and what has been decided by the supreme court of Iowa. It does not seem to me that we ought to be called upon to disregard the laws of Iowa or the certificate issued by the Iowa supreme lodge. It is maintained in the majority opinion that the Nebraska statute should apply, although the association is an Iowa association. The Iowa decisions are to the effect that the person who becomes a beneficiary has his status determined by the statute of Iowa at the time the certificate is issued. With this in force, it seems that the decision in this case is in utter disregard of the Iowa statute, and is also in disregard of the decisions of the Iowa supreme court. In this case the lodge waived any defect there might be in the claims of Marie Dworak, Milton Dworak, and Stanley Dworak, and their adversary claimants, and paid the money into court to be there disposed of as the court might order and adjudge. Marie Dworak, Milton Dworak and Stanley Dworak filed a joint answer and cross-petition to the petition of Anton Dworak. They admitted that they were beneficiaries named in the certificate

at the time it was issued, and that Joseph Dworak died on the 28th day of August, 1912. They denied that Joseph Dworak in his lifetime changed the beneficiaries under the policy in favor of the plaintiff. The trial court decided that any attempted change of beneficiaries by Joseph Dworak was not successful, and decided against Anton Dworak, and decided that Marie Dworak had been divorced from Joseph Dworak sometime before his death, and that she was ineligible to take as a beneficiary, and that her children, Milton and Stanley Dworak, were not members of Joseph Dworak's family at the time of his death, and therefore were ineligible to take as beneficiaries. The judgment was given in favor of the children of Joseph Dworak by his first wife. In the stipulation it is agreed that the supreme court of the state of Iowa in the case of *White v. Brotherhood of American Yeomen, supra,* announced the following rule: "Code, sec. 1824, provides that no fraternal association shall issue any certificate unless the beneficiary be the husband, wife, relation, legal representative, heir, or legatee of such member. An association which expressed its object to be the bestowal of financial benefits on the family, widow, heirs, relations, and such others as may be permitted by the laws of the state, and the constitution and by-laws of which permitted a change of beneficiary, issued a certificate payable to a certain person by name, such person being the wife of the member when the certificate was issued. Subsequently she was divorced, and the member remarried, but made no change of beneficiary. *Held,* that on the death of the member the first wife was entitled to the proceeds of the certificate." (99 N. W. 1071.) Under the foregoing ruling, it would seem that Marie Dworak and her children would be entitled to the judgment. A judgment against them would be in disregard of the certificate.

As I understand it, we are asked to disregard the statement of the certificate as to the beneficiaries therein named, to disregard the method of doing business adopted by the Iowa supreme lodge, and we are also called upon to dis-

regard the laws of Iowa and the decisions of its courts. That the objections that might be made are waived, see Bacon, Benefit Societies (3d ed.) sec. 308, and citations.