TRAMMEL, Respondent, v. BROTHERHOOD OF LOCOMO-
TIVE FIREMEN AND ENGINEMEN, Appellant.

No. 9108.

Submitted October 22, 1952. Decided February 11, 1953.

253 Pac. (2d) 329.

Mr. Edmond G. Toomey and Mr. Michael J. Hughes, Helena, for appellant.

Mr. Victor H. Fall and Mr. Sherman W. Smith, Helena, for respondent.

Mr. Hughes and Mr. Fall argued orally.

MR. JUSTICE ANGSTMAN:

Defendant is an unincorporated fraternal benefit society organized under the laws of the state of Ohio and operating on the Lodge System with a membership composed of locomotive firemen and enginemen. It engages in business in Montana, a part of which consists of issuing life insurance certificates to its members. In March 1942 Raymond W. Spalding, a locomotive fireman, became a member of Lodge No. 191 at Livingston and was issued such a policy of insurance in the sum of $2,000. He was then the husband of plaintiff. The primary beneficiary of the insurance in case of the death of Spalding was "Virginia M. Spalding, wife." The policy also named Paul P. Spalding, father, and Carrie S. Spalding, mother, as contingent beneficiaries. According to the terms of the policy the insurer agreed to pay the principal sum on the death of Raymond Spalding to the primary beneficiary, if living, at the death of the member, and "if within the qualified classes of beneficiaries under the constitution of the Brotherhood," otherwise payment to be made to the contingent beneficiaries.

The constitution and the application for insurance provided that a member might designate his beneficiary from among the following classes only: "Wife, child, or children, mother, father, sister, brother, other relatives by blood to the fourth degree, or persons dependent on the member for support."

The constitution provided that the insurance contract should be governed by and interpreted and construed in accordance with the law of the state of Ohio.

On November 6, 1945, while the insurance certificate was in effect, plaintiff obtained a decree of divorce from Raymond W. Spalding in which Raymond was required to pay $60 per month for the support and maintenance of plaintiff and the minor child of the parties. On November 22nd Raymond W. Spalding was killed in a train accident at Manhattan, Montana. Plaintiff then had the insurance policy in her possession. On November 23rd plaintiff delivered the policy to Mr. Kinnie Ford, secretary-treasurer of the Livingston Lodge No. 191 and told him she wanted the money. She testified that Mr. Ford told her that she would get it within two weeks. Mr. Ford on direct examination denied making such a statement, but on cross-examination admitted that he wasn't sure whether he told her she would get the money.

Other facts will be alluded to when considering the legal questions presented.

Plaintiff brought this action to recover under the policy. The court found in favor of plaintiff and entered judgment accordingly. Defendant has appealed from the judgment.

The first question raised by defendant is whether plaintiff, the divorced wife, may recover under the policy of insurance. The court found that plaintiff "was a person dependent" upon Raymond W. Spalding for support and hence concluded that she could recover.

Defendant contends that a divorced wife is not a person dependent upon the former husband but is merely a creditor of the husband. Raymond V. Blancgrass, 36 Mont. 449, 93 Pac. 648, 15 L. R. A., N. S., 976, relied on by defendant holds that

a judgment for separate maintenance of the wife makes her a creditor of the husband, but it does not negative the idea that she may likewise be considered dependent upon the husband for her support.

The decided weight of authority supports the view that a divorced wife holding a decree against her former husband requiring him to pay support money qualifies as a dependent. Rose v. Brotherhood of Locomotive Firemen & Enginemen, 80 Colo. 344, 251 Pac. 537, 52 A. L. R. 381; Schwantes v. Electrical Workers' Benefit Ass'n, 247 Wis. 508, 19 N. W. (2d) 894; Martin v. Modern Woodmen of America, 111 Ill. App. 99. And see Modern Brotherhood of America v. Quady, 175 Minn. 462, 221 N. W. 721, 59 A. L. R. 162, where the rule was recognized. And compare Arcutt v. Brotherhood of Locomotive Firemen, 157 Pa. Super. 385, 43 A. (2d) 599; Locomotive Engineers Mutual Life & Acc. Ins. Ass'n v. Laurent, 7 Cir., 172 F. (2d) 889; Pate v. Citizens & Southern Nat'l Bank, 203 Ga. 442, 47 S. E. (2d) 277.

Defendant, relying on Styles v. Byrne, 89 Mont. 243, 296 Pac. 577, and the constitution of the Brotherhood, contends that this case is governed by the laws of the state of Ohio and that whatever the rule may be in other states the courts of Ohio refuse recovery to a divorced wife as a beneficiary. The case of Lakewood Masonic Ben. Ass'n v. Jones, 68 Ohio App. 109, 36 N. E. (2d) 59, is relied on. That case is clearly distinguishable from this. After the divorce was granted in that case the husband married another woman and the controversy was between the two women. The second wife was not only the wife but was also clearly a dependent at the time of the death of decedent. In that case the deceased had designated his wife as the beneficiary, naming her. In other words, the designation was, "Wife, Catherine J. Jones." The court in that case held that the designation was to the wife and that the name given was merely descriptive and reached the conclusion that the person who was the "wife" at the time of the death of decedent was the lawful beneficiary.

Here the designation was to the person, Virginia M. Spalding, followed by the descriptive word, "wife." This case is ruled by that of Rose v. Brotherhood of Locomotive Firemen & Enginemen, 80 Colo. 344, 251 Pac. 537, 52 A. L. R. 381, where the designation was the same as here, viz., "Mamie Rose, wife," and the court held that the word "wife" was descriptive only. The court adopted the rule stated in Frank v. Frank, 209 Ala. 630, 96 So. 859, 32 A. L. R. 1478, as follows: "We cannot agree that, because she was named as wife, when in fact she was not, this precluded her from taking as a dependent and subordinated her claims to those mentioned in section 51. The mere fact that she was designated as wife instead of dependent did not disqualify her as a dependent simply because she was not so designated. She was named as beneficiary, and if she fell under any class permitted she was still the named beneficiary, notwithstanding she may have been improperly described. [Citing Wojanski v. Wojanski, 136 Ill. App. 614.]"

Another circumstance that makes the Jones case inapplicable here is that portion of the opinion which may be treated as dictum holding that the award in that case for support and maintenance of the former wife was void because the divorce was granted because of aggressions of the wife and because the laws of Ohio prohibit an award for support and maintenance under such circumstances. Here there is no question regarding the validity of the provision in the decree awarding support and maintenance to plaintiff. We have then a situation where the constitution of the Brotherhood requires the beneficiaries to be certain relatives or a dependent without anything to indicate who is regarded as a dependent. Likewise there have been no applicable Ohio laws brought to our attention that aid in solving this question.

There being no proof of a controlling decision by the courts of Ohio under facts such as we have here defining a dependent, the trial court was correct in applying the law of the forum in arriving at a conclusion on that point. 15 C. J. S., Conflict of Laws, sec. 9b, p. 877. Moreover, under the constitution of

defendant company, it was only the contract of insurance that should be governed by and interpreted and construed in accordance with the laws of Ohio. Here the question we are considering does not involve the interpretation or construction of the contract. Plainly enough the contract authorizes recovery by plaintiff if she be a dependent. The question before us is to what law do we look in order to ascertain who are dependents.

Had the policy provided for payment to "heirs" then we would resort to the laws of Montana and not to those of Ohio to ascertain who the "heirs" may be. Knights Templars & Masonic Mut. Aid Ass'n v. Greene, C. C., 79 F. 461. The same reasoning rules in determining who are dependents. Compare Modern Brotherhood of America v. Quady, supra; Dworak v. Supreme Lodge, etc., 101 Neb. 297, 163 N. W. 471, Ann. Cas. 1918 D, 1153; Millard v. Brayton, 177 Mass. 533, 59 N. E. 436, 52 L. R. A. 117, 83 Am. St. Rep. 294.

We have adopted a liberal view as to who are dependents under our Workmen's Compensation Law. Tabor v. Industrial Acc. Fund, 126 Mont. 240, 247 Pac. (2d) 472.

We adopt the majority view that a divorced wife holding a valid decree compelling the husband to pay her a monthly allowance for support and maintenance is a dependent within the meaning of statutes and the constitution of the Mutual Benefit Association restricting benefits to certain named relatives or a "dependent."

The next point urged is that plaintiff did not commence her action within the time required by the constitution of defendant. The answer alleged that defendant "on or about October 18, 1946, acting by and through its general Secretary-Treasurer denied the said pretended claim and rejected the same and plaintiff was advised of such denial and rejection on or about October 23, 1946." The constitution of defendant bars all rights of action not commenced in some court of competent jurisdiction "within six months after the claim has been passed on and denied by the highest tribunal authorized by the laws of the Brotherhood to consider and pass upon the same."

We are unable to determine from the record when this action was commenced. The first amended complaint, which is the first paper in the record, was filed on September 15, 1949. In the brief of defendant it is asserted that the action was commenced June 30, 1949. The record is not clear as to just when defendant denied plaintiff's claim. Plaintiff made no formal claim but the record warrants the conclusion that she presented the certificate of insurance to defendant's agent and demanded the payment of the amount named in the policy the day after the death of decedent. When plaintiff did not receive the proceeds of the insurance she took the matter up with the state auditor John J. Holmes. That office through the deputy insurance commissioner, Neil Flaherty, received a letter from Mr. W. E. Jones, the general secretary and treasurer of the Grand Lodge of the Brotherhood, on October 18, 1946, which he transmitted to plaintiff on October 22nd, a part of which reads:

"Upon checking our records I find that we have no claim for anyone by the name of W. R. Spalding, but we did have a claim for a Raymond W. Spalding of Laurel, Montana, and the circumstances in this claim appear to be similar to the statements made in your letter. I will give you the facts as revealed from the file of Raymond W. Spalding.

"Mr. Spalding joined the organization on March 25, 1942. He applied for and was granted $2000 insurance under the endowment at age 65 plan on May 12, 1942. In granting this insurance he directed that his wife, Virginia M. Spalding, be designated as primary beneficiary and his mother and father, Carrie S. and Paul P. Spalding, as contingent beneficiaries. His wishes were complied with. Mr. Spalding was killed November 22, 1945, due to the derailment of his engine. In making payment of this claim we found that his wife, Virginia M. Spalding, had divorced him on November 6, 1945. Under the laws of the Brotherhood a divorced wife is not a legal beneficiary and she was, therefore, not eligible to receive the proceeds of the certificate. His father and mother being designated as contingent beneficiaries we proceeded to make payment to them

and checks in their favor were issued and mailed to them on January 21, 1946.''

Defendant contends that this was notice to plaintiff that her claim was denied and rejected by the highest tribunal authorized by the laws of the Brotherhood to consider and pass upon the claim. That defendant did not so regard the letter seems clear since its counsel communicated by letter with plaintiff's counsel at various times during the year 1948, all on the supposition that the claim had not yet been finally rejected or denied by the properly authorized tribunal. The purport of the letters was to reach proper conclusion as to whether plaintiff was a beneficiary under the policy.

Among other letters, on September 3, 1948, Mr. Heiss, attorney for defendant, who resides in Cleveland, Ohio, wrote the following one to plaintiff's counsel:

''Dear Sir:

''Your letter of August 27 was duly received.

''It is our desire to come to a reliable conclusion regarding the status of your client as a lawful beneficiary of Mr. Spaulding's certificate at the time of his death, in order that we may advise our client whether it erred in making payment to the alternate beneficiary and continues to be responsible to your client for the proceeds of the Spaulding certificate. We cannot achieve this purpose without having more information than is presently available to us. Specifically, kindly advise us, if you can consistently do so, (1) the date of your client's marriage to her present husband; (2) was the deceased making regular semi-monthly payments to your client until the time of his death? If not, when did he make the last payment? Were the alimony provisions of the divorce decree filed November 6, 1945, modified in any respect prior to Spaulding's death?

''Regarding the property settlement between your client and the deceased, I suppose there is no doubt that an oral property settlement is as effective as a settlement in writing.''

On November 3, 1948, defendant's counsel wired plaintiff's counsel as follows: ''Regret delay in advising you regarding

408

Brotherhood's view Spaulding matter. Please withhold action until I am able to communicate with you on the subject.''

Mr. Heiss finally turned the matter over to Mr. Toomey of Helena who advised plaintiff's counsel to that effect on December 27, 1948, and in his letter to plaintiff's counsel stated in part:

''We will be very glad to have from you a complete expression of your views respecting the claim, including any memorandum of authorities that you may desire us to examine.''

On December 30, 1948, Mr. Toomey wrote to plaintiff's counsel as follows: ''While the above matter is new to us, we will be glad to submit any proposition you have to make for settlement of the claim, reserving to the Brotherhood all its rights and remedies.''

From the correspondence between the parties the court was warranted in finding that no final action denying plaintiff's claim was taken by the proper officers of defendant until some time after December 30, 1948. Defendant objected to the reception of the letters in evidence as not within the issues presented by the pleadings and that the subsequent correspondence does not operate as a waiver of the contractual Statute of Limitations. This evidence was admissible as some evidence that the claim had not been finally passed upon and denied by the highest tribunal authorized by the laws of the Brotherhood to pass upon the same.

Likewise the cause of action was not barred for another reason. The constitution of defendant Brotherhood limiting the time for bringing actions was not applicable to the certificate in question here. R. C. M. 1947, sec. 13-806, provides: ''Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void.'' This statute controls the question before us.

It has long been the rule that: ''Foreign insurance companies which do business in this state do so, not by right, but by grace, and must in so doing conform to its laws; they cannot

avail themselves of its benefits without bearing its burdens; moreover, the state may prescribe conditions upon which it will permit foreign insurance companies to transact business within its borders or exclude them altogether, and in so doing violates no contractual rights of the company." New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 965, 44 L. Ed. 1116.

"A contract may be valid by the law of both the place where ■ it is made and the place where it is to be performed and yet fail because the lex fori, on grounds of public policy, will not permit its enforcement. * * * The public policy of a state, established either by express legislative enactment or by the decisions of its courts, is supreme and when once established will not, as a rule, be relaxed even on the ground of comity to enforce contracts, which, though valid where made, contravene such policy." 11 Am. Jur., Conflict of Law, sec. 125, p. 411.

In Hornick v. First Catholic Slovak Union of U. S., 115 ■ Kan. 597, 224 Pac. 486, 487, the court said:

"The defendant is a corporation doing business beyond the territorial limits of the state of its creation. It does so merely by comity. The state which it enters and in which it transacts business has the power to require it to carry on its business subject to the laws of such state. The defendant has seen fit to engage in business in this state. It should not be allowed to enforce stipulations which contravene the plain provisions of the statute intended for the protection of our citizens with whom it does business.

"* * * Many statutory provisions are made for the protection of personal rights of which the parties may or may not avail themselves in their transactions as they please, but where a statute, such as is involved in this case is expressive of the public policy, any contract made in contravention of it is *ipso facto* void. Parties will not be allowed to substitute a policy of their own for an established public policy. Public policy is impersonal and of universal application within the territory of the authority declaring it."

The United States Supreme Court in a five to four opinion

has reached a contrary conclusion in Order of United Commercial Travelers of America v. Wolfe, 331 U. S. 586, 67 S. Ct. 1355, 91 L. Ed., 1687, 173 A. L. R. 1107, as did also the Supreme Court of Nebraska in Young v. Order of United Commercial Travelers of America, 142 Neb. 566, 7 N. W. (2d) 81. The majority opinion in the Wolfe case stated [331 U. S. 586, 67 S. Ct. 1358] : "If full faith and credit are not given to these provisions, the mutual rights and obligations of the members of such societies are left subject to the control of each state. They become unpredictable and almost inevitably unequal."

The question which the court was considering had nothing to do with mutual rights and obligations but merely with the remedy. The majority held that a contract may limit the time within which to bring an action to a period less than that prescribed in the general Statute of Limitations provided the shorter period shall be reasonable. But the Montana legislature has said that any shortening of the time is not reasonable.

The Wolfe case is predicated on Article IV, sec. 1, of the Constitution of the United States which reads in part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." The constitution of defendant company is not a public act but is merely a private act applicable only to that company. If section 1, Article IV, of the United States Constitution has any application here it should operate to compel the insurance company to give full faith and credit to the laws of Montana declaring void a stipulation such as it is counting on. In other words, when defendant is permitted to do business in Montana, it should be understood that it will do business in accordance with Montana laws. Such laws declare the public policy of the state. New York Life Ins. Co. v. Block, 6 Ohio Cir. Dec. 166; Millard v. Brayton, supra.

We note too that this case differs from the Wolfe case in that in the Wolfe case the plaintiff and the Insurance Company were both residents of the state of Ohio, whereas here the

plaintiff is a resident of Montana and only the insurance company has its legal residence in Ohio.

We are impressed with the logic of the dissenting opinion in the Wolfe case.

Defendant, in reliance upon Supreme Council of Royal Arcanum v. Green, 237 U. S., 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771; Modern Woodmen of America v. Mixer, 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384, and Sovereign Camp W. O. W. v. Bolin, 305 U. S. 66, 59 S. Ct. 35, 83 L. Ed. 45, 119 A. L. R. 478, contends that the rule in the Wolfe case is of long standing. Those cases are distinguishable from this as pointed out in the dissenting opinion in the Wolfe case.

The court did not err in concluding that plaintiff is entitled to recover. The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES BOTTOMLY and FREEBOURN, concur.

MR. JUSTICE ANDERSON not being a member of the court at the time of the oral argument took no part in the decision.