**SAFECO INSURANCE COMPANY OF AMERICA, a Corporation, Appellant,**

v.

**Dale L. ROBEY, Appellee.**

**Dale L. ROBEY, Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, a Corporation, Appellee.**

**Nos. 19042, 19043.**

United States Court of Appeals Eighth Circuit.

Aug. 13, 1968.

**331**

Sidney P. Davis, Jr., of Putman, Davis & Bassett, Fayetteville, Ark., for Safeco Ins. Co. of America.

James W. Gallman, Fayetteville, Ark., for Dale L. Robey; E. J. Ball, Fayetteville, Ark., on the brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

These cross-appeals are concerned with the question of whether the uninsured motorist coverage of a liability insurance policy affords multiple coverage to a person qualifying as an insured under more than one policy. In No. 19,042 Safeco Insurance Company of America is the appellant and Dale L. Robey is the appellee, and in No. 19,043 the parties' positions are reversed. This is a diversity case, Robey being a citizen of Arkansas, Safeco a corporation having its principal place of business in the State of Washington, and the substantive law of Arkansas applies. The District Court opinion by the Honorable John E. Miller is reported at 270 F.Supp. 473 (W.D. Ark.1967).

On October 29, 1965 Robey was a co-passenger with Clarence E. Wilson in a 1956 Chevrolet Station Wagon owned and operated by Robert E. O'Connell in Washington County, Arkansas, when the O'Connell vehicle collided with a 1961 Chevrolet truck operated by Marvin Lee Dobbs. It is admitted that the collision was proximately caused by Dobbs' negligence. Dobbs carried no liability insurance, bringing into play the Uninsured Motorists coverage on a liability policy issued to O'Connell by Northwestern Security Insurance Company and two liability policies issued to Robey by Safeco on separate vehicles. O'Connell and Wil-

son were killed in the collision and Robey suffered severe personal injuries.

All three policies provided Uninsured Motorists and Medical Expenses coverage. Robey qualified as an insured under all three policies. All policies were written in an attempted compliance with Ark.Stat.Ann. § 66–4003 (1966 Repl.) and were subject to terms and conditions stated in the policies. The Uninsured Motorists coverage in each of the three policies is limited to $10,000 for one person and $20,000 for multiple parties.

Robey was paid $1,000 medical expenses under the Northwestern policy and sued to recover from Northwestern $10,000 additional under the Uninsured Motorists coverage. This state suit of Robey against Northwestern was removed to the United States District Court and Northwestern, after impleading the personal representatives of O'Connell and Wilson, successfully maintained that its liability was limited to $17,000 to all parties concerned, it having previously paid $1,000 to each of the three parties under the Medical Expenses section of the policy. (The Court's opinion in Robey v. Northwestern Security Insurance Company is reported at 270 F.Supp. 466 (W.D.Ark. 1967)). In that suit the District Court held Northwestern was entitled to deduct the amounts paid for medical expenses against the Uninsured Motorists coverage and apportioned the remaining coverage of $17,000 among the parties, so that Robey received $3,000 in addition to the $1,000 previously received under the Medical Expenses coverage.

The insured had contended in that case that the Medical Expenses—Coverage B was separate and distinct from the Uninsured Motorists—Coverage C, which was issued for a separate premium, in accordance with the requirements of Ark.Stat.Ann. § 66–4003 (1966 Repl.). No appeal was taken in the *Northwestern* case.

Under the Arkansas statute [1] any insurance company offering liability coverage must also afford uninsured motorist coverage not less in amount than the limits prescribed in the Motor Vehicle Safety Responsibility Act of 1953, § 75–1427 (1965 Supp.), as amended, which calls for a minimum amount of $10,000 for one person and $20,000 total coverage. Under the statute, the insured has an option to reject the uninsured motorist coverage.

Robey's medical expenses totaled $2,464.84 as of May 1, 1966. He was in the hospital from October 29, 1965 to January 29, 1966. Safeco admits liability to him of the balance of his medical expenses as of May 1, 1966 in the amount of $1,464.84, deducting the $1,000 received from Northwestern from the original amount. Safeco contends that it has no further liability under the two policies issued to Robey for the reason that the Other Insurance provision of the policies relieves it of any obligation to pay Robey. That provision under the Limits of Liability section relating to Coverage G—Uninsured Motorists, reads:

"Other Insurance: With respect to bodily injury to an insured while oc-

---

1. Ark.Stat.Ann. § 66–4003 (1966 Repl.) reads:
"Automobile liability uninsured motorist requirements.—No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto, in not less than limits described in section 27 of Act 347 of 1953 [§ 75–1427], as amended, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage. [Acts 1965, No. 464, § 1, p. 1570.]."

cupying an automobile not owned by the named insured, the insurance under Uninsured Motorists shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and SAFECO shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Since the limits of each Safeco policy are identical to the limits of the Northwestern policy, Safeco maintains its liability is zero. The excess clause placing it as an excess insurer over the primary insurer, Northwestern, does not operate to reduce its liability, but the "excess-escape" clause limiting its excess liability to the amount its stated limits exceed those of Northwestern would—its paper coverage does not exceed the paper coverage of Northwestern.[2]

The Uninsured Motorists coverage of all three policies contains substantially identical provisions relating to limits of liability as affected by medical expenses paid or payable under the Medical Expenses coverage of the policies. The Safeco provision, paragraph (d) of the Limits of Liability under the Uninsured Motorists section coverage, reads:

"(d) SAFECO shall not be obligated to pay under this coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under the Medical Expenses Section."

One of the Safeco policies provides a Medical Expenses coverage of a per person limit of $2,000, while the other one provides only $1,000; both policies contain an Other Insurance provision applicable to the Medical Expenses coverage, which reads as follows:

"Other Insurance: If there is other automobile medical payments insurance against a loss covered by Medical Expenses Section of this policy SAFECO shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance."

This provision would relieve Safeco of the first $1,000 of medical expenses received from Northwestern, but would cover the excess medical expenses within the policy limits.

Robey filed this present action against Safeco in the United States District Court seeking recovery of $10,000 on each policy under the Uninsured Motorists coverage and $2,464.84 under the combined Medical Expenses coverage of the two policies.

While denying any liability to Robey except for $1464.84 of the medical expense, Safeco maintains that if any amount were recoverable by Robey under the Uninsured Motorists section of the policies, such amount should be reduced by the $1464.84 Medical Expenses

---

2. By the Other Insurance provision: " * * * [T]his insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

coverage and the $4,000 received from Northwestern.

Both parties moved for summary judgment. The District Court granted Robey's motion for summary judgment in the amount of $16,000 and denied the motion of Safeco. The District Court held that the Other Insurance clause under the Uninsured Motorists section was valid under Arkansas law as to the Northwestern policy, but inapplicable as to the other Safeco policy; that the Motor Vehicle Safety Responsibility Act only set a minimum coverage requirement; that policies could be written in excess of the minimum, and separate policies issued by an insurance company could aggregate above the minimum requirement; that the insured could recover under the Uninsured Motorists coverage of both policies, but the recovery would be reduced by the amount received from the Northwestern policy issued to O'Connell; that the Medical Expenses coverage of decedent O'Connell's policy and of the Safeco policies would reduce the amount of coverage available on the Uninsured Motorists coverage; and that Robey was not entitled to recover attorney's fees or penalties since the full amount sued for had not been allowed. The District Court therefore, deducted the $4,000 received by Robey from Northwestern (which amount included the $1,000 medical expense payment) from the $10,000 amount in one of the Safeco policies and allowed a full recovery of the $10,000 amount under the Uninsured Motorists coverage of the other policy, treating any amounts owing for medical expense to be includable within the limits of the coverage of the Uninsured Motorists sections.

Both sides appeal. Robey contends he is entitled to the full $10,000 from each Safeco policy under the Uninsured Motorists—Coverage G, plus the $2464.84 medical expense under the separate Coverage C—Medical Expenses. Safeco contends it has no liability except for medical expenses in the amount of $1464.84; that if any amount is recoverable under the Uninsured Motorists coverage, medical payment expenses and other insurance received is deductible therefrom; that recovery is limited to one of its policies or there is proration between them; and that there is a factual issue remaining as to the amount of damages within the coverage limits of the policies on which it asks a jury trial.

We first consider Safeco's contention of no liability because of the Other Insurance provision of its policies. Robey is admittedly an insured under all policies, being the named insured under the Safeco policies and an occupant of the insured O'Connell car under the Northwestern policy.[3]

Uninsured motorist coverage is a relatively new concept of insurance protection, and, while its acceptance, aided by statutes requiring liability insurance companies to offer this type of protection, has been widespread, its application to varied factual situations has brought forth a contrariety of judicial opinion.

There are cases supporting Safeco's position that the "excess-escape" clause with its limitation of liability to the amount that its stated limits exceed the limits of any other applicable policy has been held to be permissible and not violative of minimum statutory limits to be afforded in coverage of this type.[4]

---

3. The Northwestern policy defines "insured" as "(b) any other person while occupying an insured automobile :".

4. The Utah Supreme Court in Russell v. Paulson, 18 Utah 2d 157, 417 P.2d 658 (1966) gave effect to an "excess-escape" provision though the Court did not discuss the effect of any statutory requirement; an Illinois Appellate Court in Tindall v. Farmers Automobile Manage-

ment Corporation, 83 Ill.App.2d 165, 226 N.E.2d 397 (1967) approved an "excess-escape" clause and held the clause was not violative of the uninsured motorists statute, which it construed was designed to afford protection to the same extent as the Financial Responsibility Act; in New York an intermediate appellate court in Globe Indemnity Company v. Baker's Estate, 22 A.D.2d 658, 253 N.Y.S.2d 170

There are other jurisdictions holding that other insurance clauses, including the "excess-escape" clause, are either repugnant or are violative of state statutes requiring a minimum amount of uninsured motorist protection. The Oregon Supreme Court in Smith v. Pacific Automobile Insurance Co., 240 Or. 167, 400 P.2d 512 (1965) without the benefit of statute held an excess insurance clause repugnant with a pro-rata clause and the insurer liable up to the full extent of its policy limits. That opinion points out that there is nothing offensive about "stacking" insurance benefits and the inapplicability of the overinsurance principle of fire insurance cases to accident insurance. The Florida Supreme Court in Sellers v. United States Fidelity & Guaranty Company, 185 So. 2d 689 (1966) held invalid "excess-escape" clauses as contrary to the uninsured motorist statute and allowed the insured to recover from all insurers the full amount of his actual damages for bodily injury to the extent of the coverage limits of each policy. That Court said at 690:

"There appears no latitude in the statute for an insurer limiting its lia-

bility through 'other insurance'; 'excess-escape' or 'pro-rata' clauses, as attempted in Condition 5."

This case was an express declaration of Florida State law and effectively overruled the Fifth Circuit case of Chandler v. Government Employees Insurance Company, supra. The Supreme Court of Appeals of Virginia in Bryant v. State Farm Mutual Automobile Insurance Company, 205 Va. 897, 140 S.E.2d 817 (1965) held an "excess-escape" clause in conflict with the provisions of the uninsured motorist statute and void, thus overruling in effect the Fourth Circuit case of *Travelers Indemnity Company*, supra, the Virginia court reasoned at 820 of 140 S.E.2d:

"We cannot agree with that holding [Travelers]. Aside from the Smith insurance not being 'available' to the Wells after the Smiths had taken it all, we are of the opinion, * * * that the Other Insurance provision * * * is invalid because in conflict with the requirement of [the statute]."

We think the line of cases holding the "excess-escape" clauses repugnant to the pro-rata clauses, or as viola-

(1964) gave effect to another insurance clause as written though it did not discuss any statutory requirement, and the holding in part was based upon the United State Court of Appeals case of Travelers Indemnity Company of Hartford, Connecticut v. Wells, 316 F.2d 770 (4 Cir. 1963), which case has subsequently been overruled in principle by a Virginia Supreme Court of Appeals case.

The Washington Supreme Court approved an "excess-escape" clause in Miller v. Allstate Insurance Company, 66 Wash.2d 871, 405 P.2d 712 (1965) without a discussion of the effect, if any, of any statutory minimum requirement; the Iowa Supreme Court in Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500 (1963) held a "mixed excess-escape" clause effective to relieve the insurer of any liability, though the effect of any statutory minimum was not considered.

A limitation of liability to the single amount of the higher limits of two applicable insurance policies was approved by the New Hampshire Supreme Court in

Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A.2d 420 (1965) and by the Michigan Supreme Court in Horr v. Detroit Automobile Inter-Insurance Exchange, 379 Mich. 562, 153 N.W.2d 655 (1967).

There are also the United States Court of Appeals cases of *Travelers Indemnity*, supra, and Chandler v. Government Employees Insurance Company, 342 F.2d 420 (5 Cir. 1965), the latter case construing Florida law, that support the above holdings. These federal appellate cases, however, have in effect been overruled by subsequent state court decisions declaring a contrary view of the state law as interpreted by those federal courts —thus, demonstrating the occupational hazard inherent in a federal court's interpretation of state law. In addition, there are California cases holding to the above viewpoint but these are not applicable, as California by statute expressly provides for proration of damages in the event of multiple coverage in uninsured motorist cases. Cal.Ins.Code, § 11580.2(d).

tive of statutory requirements of minimum protection to be afforded under the uninsured motorist acts, represent a sounder view of the law. The contrary view is predicated on the salutary but inapplicable principle of avoiding overinsurance in property loss cases and on the questionable premise that uninsured motorist statutes fix maximum protection benefits rather than minimum.[5] It appears to us that the "excess-escape" clauses are repugnant to the pro-rata clauses under which the insurer is liable pro-rata up to the full extent of its coverage; the other insurance and "excess-escape" clauses operate to diminish or wipe out entirely the minimum protection sought to be afforded under the uninsured motorist acts; and further the uninsured motorist acts are written to set minimum standards of protection and not maximum.[6]

■ The District Court, however, found other insurance clauses valid under Arkansas law and we certainly are not able to say that the District Court's view is a misconstruction of the Arkansas law. The Supreme Court of Arkansas has approved other insurance and excess clauses in fire insurance policies and by implication has approved these clauses in liability insurance policies. In Arkansas Grain Corp. v. Certain Underwriters at Lloyd's, London, 240 Ark.

750, 402 S.W.2d 118 (1966), the Arkansas Supreme Court in a fire insurance controversy between insurers held an excess insurance clause valid and operative against the pro-rata clause of the other policy and cited with approval the liability insurance case of Citizens Mutual Automobile Insurance Company v. Liberty Mutual Insurance Company, 273 F.2d 189 (6 Cir.1959), which latter case stated the majority rule in automobile liability insurance cases as follows at 193:

"The foregoing authorities represent the overwhelming majority view that when an excess clause in one automobile liability insurance policy conflicts with another 'other insurance' clause, and more particularly a 'pro-rata' clause, in a second policy, the excess clause controls and is to be given its full effect."

The excess clause in fire policies and in personal liability policies, however, mainly operates to place the initial burden on the primary insurer up to the extent of the primary insurer's limits and thus makes available as excess insurance the policy limits of the other policy; whereas, the "excess-escape" clause in uninsured motorist policies presents a different problem as these clauses, as usually written with the limitation of only being liable for the difference between the policy limits of the primary

---

5. Safeco contends that uninsured motorist coverage is optional and reasons that the purpose of the uninsured motorist statute as a feature of automobile liability insurance is to furnish the insured the same minimum protection that would be available if he were involved in a collision with a person carrying the minimum insurance required by the Arkansas Motor Vehicle Safety Responsibility Act, and if Dobbs had had minimum liability insurance the Uninsured Motorists coverage of the Northwestern and the Safeco policies would not be applicable. This view finds support in Tindall v. Farmers Automobile Management Corporation, 83 Ill.App.2d 165, 226 N.E.2d 397 (1967); LeBlanc v. Allstate Insurance Company, 194 So.2d 791 (La.App.1967); Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A.2d 420 (1965).

This concept is plausible, but is too narrow and restrictive. It ignores the fact that the statute only requires a minimum protection of $10,000/$20,000 and does not in any way attempt to limit the ceiling of liability coverage, Deterding v. State Farm Mutual Automobile Insurance Company, 78 Ill.App.2d 29, 222 N.E.2d 523 (1966), and further that separate policies issued for separate considerations should afford the protection ostensibly offered by the insurance companies.

6. For example, Ark.Stat.Ann. § 66–4003 (1966 Repl.) in part provides no automobile liability insurance shall be issued in the state "unless coverage is provided * * * in not less than limits described in" the Motor Vehicle Safety Responsibility Act for protection against uninsured motorists.

insurer and the policy under consideration, generally operate to provide no protection whatever as the limits are usually the same; and, of course, there is the further important point of the statutory requirement of uninsured motorist acts affording protection in at least minimum amounts. This latter factor is not involved in the fire insurance cases and does not present the same kind of issue in the personal liability cases.

The Arkansas Supreme Court also held in Varvil v. M. F. A. Mutual Insurance Companies, 243 Ark. 692, 421 S.W. 2d 346 (1967) that two separate identical policies of liability insurance setting a maximum funeral benefit of $1,000 provided only actual total coverage of $1,000 for the funeral benefit, the Court giving full effect to a policy provision of:

"Other Automobile Insurance In The Company—With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy."

While this case is of some benefit in attempting to construe Arkansas law (it had not been handed down at the time of the District Court's decision), we think the case is distinguishable on its facts (1) as it is not an uninsured motorist case, and (2) the particular language employed in the policy clearly sets forth the total benefit recoverable under multiple policies in the issuing company. Our view is supported by the recent District Court decision of Judge Henley in the case of Childers v. Southern Farm Bureau Casualty Insurance Co. and M. F. A., 282 F.Supp. 866 (E.D.Ark.1968).

Accepting the District Court's holding that the Other Insurance clause is valid, at least to the Northwestern policy, brings us to the second question concerning the proper setoff or credit to be accorded the excess insurer on funds received by the insured from the primary insurer or others.

The District Court in giving effect to the Other Insurance clause of Safeco's policies allowed a deduction (1) for the amounts actually received and thus made available to the insured Robey from the Northwestern policy in the amount of $3,000 on the Uninsured Motorist coverage and $1,000 from the Medical Expenses coverage, and (2) allowed a deduction of the balance of medical expense in question of $1464.84, thereby allowing recovery of the excess insurance provided under the first Safeco policy in the amount of $6,000 and the full $10,000 excess of the second Safeco policy (which included the admitted liability on medical expenses). This decision is not in accord with some state cases, holding that paper coverage alone is sufficient to bring into full play the operation of the "excess-escape" clause even though insufficient proceeds are actually available to the insured;[7] nor in accord with cases limiting recovery to the higher single policy limits.[8] The decision,

---

**7.** In Tindall v. Farmers Automobile Management Corporation, 83 Ill.App.2d 165, 226 N.E.2d 397 (1967) the Appellate Court of Illinois gave full effect to an "excess-escape" clause, and the Court held at 399: "That the primary coverage may be exhausted or insufficient to compensate fully for the damages sustained is not a sufficient basis for disregarding the language or limitation of the provision concerning other insurance coverage." In Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 N.W.2d 500 (1963) the Iowa Supreme Court held no liability on

the insurer on three policies of uninsured motorist insurance, where the named insured had not received the full amount of the coverage from the primary insurer.

**8.** The Supreme Court of New Hampshire in Maryland Casualty Company v. Howe, 106 N.H. 422, 213 A.2d 420 (1965) gave effect to other insurance clauses limiting recovery to "higher" limits of the applicable policies and ordered proration between insurers.

In Horr v. Detroit Automobile Inter-Insurance Exchange, 379 Mich. 562, 153

however, is in line with the Louisiana case of LeBlanc v. Allstate Insurance Company, 194 So.2d 791 (La.App.1967), which allowed an insured to recover from his excess insurer the difference between the amount of his actual recovery from the primary insurer and the policy limits of his own insurance,[9] and is in accord with other state decisions interpreting the phrase "insurance available" in the other insurance clauses to mean insurance proceeds collected or available to the insured.

The Arizona case of Kraft v. Allstate Insurance Company, 6 Ariz.App. 276, 431 P.2d 917 (1967), absent statute, construed "available" to mean "actually available for the use of the injured party" and said at 920 of 431 P.2d:

"This construction is reasonable, notwithstanding absence of a statute, where an insured has paid an additional premium to protect himself under such circumstances. To permit the insurance company which received the additional premium to avoid liability when its insured *in fact* cannot collect for his loss under the 'other insurance' shocks the conscience of this court."

The North Carolina Supreme Court in Moore v. Hartford Fire Insurance Company Group, 270 N.C. 532, 155 S.E.2d 128 (1967) allowed a full recovery to the extent of actual loss against multiple policies even though the insured had shared in a recovery under the driver's policy. The Supreme Court of Appeals in Virginia in *Bryant*, supra, allowed recovery of the unpaid part of actual loss against the excess insurer within the policy limits. The South Carolina Supreme Court in Vernon v. Harleysville Mutual Casualty Company, 244 S.C. 152, 135 S.E.2d 841 (1964) held an excess insurance provision to be in contravention of the uninsured motorist act at the

time of loss and hence void (the act was later amended to allow property damage exclusion where coverage was afforded by other insurance). The Florida Supreme Court in Southeast Title and Insurance Company v. Austin, 202 So.2d 179 (1967) voided a setoff provision of workmen's compensation benefits as being in conflict with the statutory minimum protection. To the same effect is a decision of Judge Gordon Young of the United States District Court of Arkansas construing Arkansas law as voiding restrictive clauses excluding vehicles owned by the Government or any governmental unit, and a diminution clause allowing the insurer a credit on workmen's compensation benefits. Carter v. Saint Paul Fire and Marine Insurance Company, 283 F.Supp. 384 (E.D.Ark. 1968).

We think the District Court reached a proper decision in construing the phrase "other insurance available" to mean insurance proceeds actually available to the insured.

This brings us to a companion question of the deductibility of medical expenses paid or available from the amount recovered for bodily injury or death under the Uninsured Motorists coverage. The Medical Expenses coverage is separate and distinct from the Uninsured Motorists protection coverage for which an additional premium is properly charged. If we were viewing this issue initially, we think any recovery of medical expenses should not be deductible from the bodily injury loss sustained under the Uninsured Motorists coverage for the reasons previously discussed. But having approved Judge Miller's holding of validity under current Arkansas law of other insurance clauses, we are foreclosed from according any different treatment on these medical expenses and must give effect to

N.W.2d 655 (1967) the Court held valid another insurance limiting clause and a pro-rata clause, limiting liability to the single amount of one policy (the policies being identical in amount) and ordered proration between insurers.

9. *LeBlanc* was a two-to-one decision in which the dissenting judge would have followed the *Sellers* and *Bryant* opinions and allowed recovery of actual damages up to the full limits of the excess insurance.

the Other Insurance clauses contained in the policy as respects medical expenses.

■ The next question is whether the second policy issued by Safeco provides any coverage to the insured. Safeco contends that the *Varvil* case controls this issue as it dealt with multiple policies issued by the same insurer; and this Court must apply the State law as it exists at the time the appeal is heard and not at the time of the District Court's decision. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). For reasons previously discussed relating to the actual phraseology used in the policies and because *Varvil* is not an uninsured motorist case, we do not think that case controlling and approve the District Court's resolution of this issue.

The Arkansas case of Kansas City Fire & Marine Insurance Company v. Epperson, 234 Ark. 1100, 356 S.W.2d 613 (1962), held that a single policy covering two vehicles providing for $1,000 medical coverage per person resulted in coverage of $2,000 for medical expenses to the insured's daughter. Also supportive of the trial court's resolution of this question is Deterding v. State Farm Mutual Automobile Insurance Company, 78 Ill.App.2d 29, 222 N.E.2d 523 (Ill.App. 1966), holding the statutory uninsured motorist protection is a minimum protection and not maximum, and additional protection may be offered by the insurance companies. It held that when different insurers are involved the other insurance provision applies, but that when the same insurer issued multiple policies the coverage is the total amount of both policies and actual damages are recoverable to the full extent of the limits of both policies.

The last issue raised by Safeco relates to the trial court awarding damages in excess of $10,000. This is a summary judgment proceeding and Safeco stipulated that Robey's damages were $10,-000. Judge Miller was familiar with Robey's injuries and expenses, having heard the case of Robey v. Northwestern

Security Insurance Company, 270 F. Supp. 466 (W.D.Ark.1967). Robey was 37 years old at the time of the accident. He was an assistant professor at the University of Arkansas and was also tennis coach for that institution. His combined salary was about $11,700 per annum. He was in the hospital from October 29, 1965 to January 29, 1966 and had incurred at the date of the hearing in that case medical and hospital expenses amounting to $2874.98. That his injuries were severe is apparent. Judge Miller said in Robey v. Northwestern Security Insurance Company, supra, at 472:

"Suffice it to say that the injuries received by Dr. Robey and the damage suffered were of such severity and disabling that in a proper case he would doubtlessly be entitled to recover a sum greatly in excess of $10,-000."

Judge Miller in the case at bar made the following comment: "No contention is made that the damages sustained by plaintiff are not greatly in excess of $20,000." 270 F.Supp. at 478.

■ It appears to us that Robey's damages are considerably in excess of the $16,000 allowed by the District Court's judgment. Safeco, however, strenuously contends that since this is a summary judgment proceeding there does exist a genuine issue of material fact relating to the extent of Robey's damages and this being so it is entitled to a jury trial on this issue. We think Safeco is correct on this point. Since Safeco refused to stipulate damages to the extent of the claim and requests a jury trial on the issue of damages, we have no alternative but to remand the case solely on the issue of damages, holding that there is liability against Safeco up to the amount allowed by the District Court in its original judgment. It is with some reluctance we do this, since it is apparent to us that the actual situation on Robey's damages could support a verdict far in excess of the limits of Safeco's liability, but we are here

dealing with a summary judgment proceeding and not a plenary hearing on the merits. In this context Safeco has the right if it so desires to submit the issue of damages to the jury (assuming a proper request were made for a jury trial).

 We approve of Judge Miller's refusal to allow statutory penalties and attorney's fees inasmuch as Robey did not recover the full amount sued for in his complaint. We express no opinion, however, on the applicability of the statutory penalty provisions in the event of a trial on the merits on the issue of damages.

The judgment of the District Court is affirmed in all respects, except as to the issue of damages, and is remanded for a retrial on that issue.