280 So.2d 52 (1973)
UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,
v.
Marie GILLEN, Individually, et al., Appellees.
No. 71-1096.
District Court of Appeal of Florida, Fourth District.
July 6, 1973.
Rehearing Denied August 2, 1973.
*53 W. Marvin Hardy, III, of Gurney, Gurney & Handley, P.A., Orlando, for appellant.
Terrell Griffin, of the Law Offices of Russell Troutman, P.A., Winter Park, for appellees.
OWEN, Judge.
Appellant insurer appeals from a declaratory judgment holding that the "other insurance" clause of the uninsured motorist coverage of its policy (delivered to its insured in New Hampshire while a resident of that state) is void as against the public policy of Florida.
On December 16, 1969, appellant delivered to Mr. and Mrs. Gillen, residents of the State of New Hampshire, two automobile liability insurance policies, No. 29 describing a Karmann Ghia and No. 28 a Volkswagen bus. Both policies provided for uninsured motorist coverage of $10,000 per person and $20,000 per accident, with a separate premium paid for this coverage on each policy. The policy period was for one year.
In July, 1970, the Gillens moved to Florida, notifying appellant. In August, 1970, Mr. Gillen sold the Volkswagen bus on which Policy No. 28 was written and bought a 1969 Volkswagen Squareback. He notified appellant, which issued Policy No. 31 covering the Volkswagen Squareback, and cancelled Policy No. 28. On September 7, 1970, the Gillens, while riding in the Volkswagen Squareback, were involved in a serious accident in Orange County, Florida, in which Mr. Gillen was killed and Mrs. Gillen seriously injured. The automobile collision was due solely to the negligence of an uninsured motorist.
Mrs. Gillen and the personal representative of her husband's estate joined in bringing this suit for declaratory judgment against the insurer after the latter took the position that the "other insurance" clause of Policy No. 29[1] (insuring the Karmann *54 Ghia) was applicable because similar insurance coverage was available to the insureds under Policy No. 31 (insuring the Volkswagen Squareback). The trial court held that because at the time of the accident the Gillens were residents of Florida, and the cars were licensed and garaged in Florida, all of which was known to the insurer, the uninsured motorist coverage of Policy No. 29 was subject to the law of Florida (which holds such "other insurance" clauses in uninsured motorist coverage are void as contrary to public policy[2]) rather than to the law of New Hampshire (which recognizes the "other insurance" clauses as valid and enforceable[3]). The final judgment determined the plaintiffs entitled to the benefits of the uninsured motorists coverage on both policies.[4] It also awarded attorney's fees.
The question is whether Policy No. 29 is to be governed by the law of Florida, where the accident occurred and where the insureds resided at the time of the accident, or whether it is to be governed by the law of New Hampshire where the policy was delivered and where the insured resided at the time of issuance of the policy.
Both parties to this appeal refer to the "center of gravity" or "grouping of contacts" test of choosing the state law that should be applied, and both cite and rely upon Section 188, Restatement of the Law, Second, Conflicts of Law (1969). They disagree, however, as to whether the contacts which are to be taken into account are those which existed at the time of entering in the contract, or those which existed at the time of the accident. If the former, New Hampshire has the more significant relationship to the transaction and the parties. If the latter, Florida has the more significant relationship to the transaction and the parties.
We think that the contract should be governed by the laws of the state in which the policy was delivered and in which the insured resided at the time of delivery. This would be the State of New Hampshire. The rights and obligations of the respective parties under the contract, once entered into, should not vary or fluctuate from state to state depending upon fortuitous circumstances of where an accident might occur, or the arbitrary decision of where the insured might elect to thereafter reside. In the case of Aetna Casualty & Surety Co. v. Enright, Fla.App. 1972, 258 So.2d 472, the Third District Court of Appeal, in a somewhat similar factual situation reached a similar conclusion, and the opinion by Judge Pearson sets forth the general principles of law which would be applicable and which we need not repeat here. While the insured in the Enright case had not become a Florida resident, as distinguished from the insureds in the instant case, we feel that this fact alone should not cause us to reach a conclusion contrary to that reached in the Enright case.
Appellant also complains of the award of attorney's fees to the insureds' attorneys. The evidence shows and the court found that it was necessary for the insureds to bring this suit to obtain the benefits under Policy No. 31, and thus it was proper to award an attorney's fee to plaintiffs' counsel. However, in determining the amount to be awarded, the court may have taken into consideration a successful recovery under Policy No. 29. Upon remand the court is directed to reconsider the award of attorney's fees in light of our decision as to Policy No. 29, and award to plaintiffs *55 reasonable attorney's fees as the circumstances of the case may require.
The judgment is reversed and this cause remanded for further proceedings consistent herewith.
Reversed and remanded.
WALDEM, J., concurs.
MAGER, J., dissents with opinion.
MAGER, Judge (dissenting):
In my humble opinion, the majority decision is in direct conflict with the public policy of Florida regarding "other insurance" provisions, as enunciated in Sellers v. United States Fidelity & Guaranty Co., Fla. 1966, 185 So.2d 689, and reaffirmed in Allstate Insurance Co. v. Dairyland Insurance Co., Fla. 1972, 271 So.2d 457.[1] In Allstate, supra, the Supreme Court of Florida, in restating what it held in Sellers, supra, observed, 271 So.2d at p. 458:
"On certiorari, this Court quashed the decision of the District Court, construing Fla. Stat. § 627.0851, F.S.A. to invalidate `Other insurance' clauses in liability contracts insofar as these operated to limit uninsured motorist protection. In view of the intent of the statute to provide the motorist with complete coverage and the probability that several or all the carriers involved in an uninsured motorist accident would claim protection from liability under such other insurance provisions, the Court concluded that, `the fairest solution would be to void these clauses as hopelessly in conflict and prorate the loss between the carriers in the proportion that the policy limits bear to the total amount of insurance available.'" (Emphasis added.)
A well established limitation upon the recognition and enforcement of foreign laws under the doctrine of comity is the principle that where the enforcement of the foreign law would contravene the public policy of the forum, the foreign law will not be enforced; the rule of comity does not require the forum state to give effect to a foreign law where to do so would prejudice the state's own rights or the rights of its citizens. 16 Am.Jur. Conflict of Laws § 6; 6 Fla.Jur. Conflict of Laws, § 4. See also Hartford Accident and Indemnity Co. v. Thomasville, 1930, 100 Fla. 748, 130 So. 7.
To apply the law of New Hampshire which recognizes the "other insurance" clauses as valid and enforceable would, in my opinion, do violence to the positive decisional law of Florida which has declared such "other insurance" clauses as void and unenforceable.
The fact that the insureds, in the case sub judice, were Florida residents not only distinguishes the instant situation from that which was present in Aetna Casualty & Surety Co. v. Enright, Fla.App. 1972, 258 So.2d 472, but serves to underscore the limitations on the rule of comity where citizens of the forum are concerned. See also Trammel v. Brotherhood of Locomotive Firemen, etc., 1953, 126 Mont. 400, 253 P.2d 329.
Furthermore, the circumstances of the instant case present a stronger argument militating against the recognition of "other insurance" clauses than was present in Sellers and Allstate. In those cases the court was dealing with a question of the proration of claims between different insurers. In the instant case we have the same insurer on two separate policies. Cf. Government Employees Insurance Company v. Sweet, Fla.App. 1966, 186 So.2d 95.
This distinction is quite vividly delineated in a recent decision rendered by the Supreme Court of a sister state. In United Services Automobile Association v. Dokter, *56 1970, 86 Nev. 917, 478 P.2d 583, 584-585 (1970), the Supreme Court of Nevada held:
"The other insurance clause is not free of ambiguity when considered within the context of this case. Its purpose is twofold  to prorate the loss and to fix the limit thereof. Obviously, there is no purpose in proration unless the `other insurance' was written by another company, since the provision is designed to preclude payment of a disproportionate amount of a loss shared with another company. Deterding v. State Farm Mutual Automobile Ins. Co., 78 Ill. App.2d 29, 222 N.E.2d 523 (1966); Safeco Ins. Co. of America v. Robey, 399 F.2d 330 (8 Cir.1968); Woolston v. State Farm Mutual Ins. Co., 306 F. Supp. 738 (W.D. Ark. 1969); cf. Government Employees Ins. Co. v. Sweet, 186 So.2d 95 (Fla. App. 1966). Accordingly, in the cited cases the courts declined to apply the `other insurance' clause to limit recovery when the same insurance company issued both policies. Because the insured would not reasonably anticipate the construction urged, this clause is ambiguous in this situation and is to be construed against the insurer. Home Indemnity Co. v. Desert Palace, Inc., 86 Nev. 234, 468 P.2d 19 (1970). The insured does not receive a windfall since he paid two separate premiums for the indemnity of two separate policies. Sturdy v. Allied Mutual Ins. Co., 203 Kan. 783, 457 P.2d 34 (1969). We hold that where the insurer issues two automobile policies containing uninsured motorist coverage, the extent of coverage is the combined total amount of such policies, and actual damages sustained by the insured are recoverable to the full extent of the combined limits of both policies. (Emphasis added.)
Quite apart from "public policy" considerations, application of Florida law rather than New Hampshire law would seem more reasonable under the conflicts of law principle reflected by the "grouping of contacts" rule. The rule is discussed in Ideal Structures Corporation v. Levine Huntsville Development Corp., U.S.D.C.N.D.Ala. 1966, 251 F. Supp. 3, where the court observed, at p. 7:
"In recent years, ... the principle that the law of the place of contracting must govern has been widely criticized. (Citations omitted). For as one might expect, it frequently happens that the place of making the contract is merely fortuitous. Under these circumstances, the mechanical application of such a rule gives recognition to the law of a state that has no real interest in the subject matter of or the parties to the contract. For these reasons, several courts have recently abandoned the rigidity of the rule of lex loci contractus in favor of a more flexible choice of law rule. (Citations omitted). The rule that these courts have adopted places emphasis upon the law of the state which has the most significant relationship with the matter in dispute. (Citations omitted)."
The "grouping of contacts" test is set forth in Restatement, 2d, Conflict of Laws (1969), Section 188:
"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,

*57 (d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue."
In the instant case, the accident occurred in Florida; at the time of the accident the domicile of the insureds was in Florida; the location of the automobile was in Florida; and, logically, the place for the performance to have occurred was in Florida. However, the place of negotiation as well as the place of contracting was in New Hampshire. It would seem, under the "grouping of contacts" test, that the State of Florida had a more significant relationship with the dispute than the State of New Hampshire.
It is well to note that the New Hampshire decision of Maryland Casualty Co. v. Howe, 1965, 106 N.H. 422, 213 A.2d 420, which recognized the validity of "other insurance" clauses (and upon which the majority decision must of necessity turn) has been subject to serious criticism. In Simpson v. State Farm Mutual Automobile Insurance Co., U.S.D.C.S.D.Ind., 318 F. Supp. 1152 (1970), it was vividly observed that the cases upon which the Supreme Court of New Hampshire relied as their basis for recognizing the validity of the "other insurance" clauses were either expressly overruled or repudiated in subsequent decisions. Interestingly, the decision in Chandler v. Government Employees Ins. Co., 342 F.2d 420 (5 Cir.1965), (cited in Howe, supra) which held the excess insurance clause to be enforceable under the laws of Florida, was expressly repudiated in Sellers, supra.
For the foregoing reasons I would affirm the judgment of the trial court holding that the "other insurance" clause void as against the public policy of Florida.
NOTES
[1] "Other Insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."
[2] Sellers v. United States Fidelity & Guaranty Co., Fla. 1966, 185 So.2d 689.
[3] Maryland Casualty Co. v. Howe, 1965, 106 N.H. 422, 213 A.2d 420.
[4] This appeal involves only Policy No. 29.
[1] The trend of most recent decisions where uninsured motorist insurance is involved is towards voiding "other insurance" clauses. See Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich., 388 Mich. 464, 201 N.W.2d 786 (1972).